# ADDENDUM

# ADDENDUM TABLE OF CONTENTS

Certificate as to Parties, Rulings, and Related Cases .............................. 1

Statutory Provisions Relied Upon .......................................................... 2

Agency Action Under Review .................................................................. 5

Declaration of Robert Levine .................................................................. 6

    Exhibit A to Declaration of Robert Levine .................................... 21

    Exhibit B to Declaration of Robert Levine .................................... 28

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), Petitioner certifies as follows:

### A. Parties, Intervenors, and Amicus Curiae

Petitioner

Petitioner is Robert Levine.

Respondent

Respondent is the Federal Aviation Administration.

Participants Below

N/A.

### B. Rulings Under Review

Petitioner challenges the temporary flight restriction noticed by the Federal Aviation Administration in Notice to Airmen No. 6/4375. *See* Add. 5.

### C. Related Cases

This case has not previously been before this Court or any other court. Counsel is unaware of any other related cases currently pending in this Court or in any other court.

## STATUTORY AND REGULATORY PROVISIONS RELIED UPON

**49 U.S.C. § 40103. Sovereignty and use of airspace.**

. . .

**(b) Use of airspace.**

. . .

> **(3)** To establish security provisions that will encourage and allow maximum use of the navigable airspace by civil aircraft consistent with national security, the Administrator, in consultation with the Secretary of Defense, shall—
>
> > **(A)** establish areas in the airspace the Administrator decides are necessary in the interest of national defense; and
> >
> > **(B)** by regulation or order, restrict or prohibit flight of civil aircraft that the Administrator cannot identify, locate, and control with available facilities in those areas.
> >
> > . . . .

**49 U.S.C. § 46110(a). Judicial review.**

**(a) Filing and venue.**— Except for an order related to a foreign air carrier subject to disapproval by the President under section 41307 or 41509(f) of this title, a person disclosing a substantial interest in an order issued by the Secretary of Transportation (or the Administrator of the Transportation Security Administration with respect to security duties and powers designated to be carried out by the Administrator of the Transportation Security Administration or the Administrator of the Federal Aviation Administration with respect to aviation duties and powers designated to be carried out by the Administrator of the Federal Aviation Administration) in whole or in part under this part, part B, or subsection (l) or (r) of section 114 may apply for review of the order by filing a petition for review in the United States

Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business. The petition must be filed not later than 60 days after the order is issued. The court may allow the petition to be filed after the 60th day only if there are reasonable grounds for not filing by the 60th day.

**(b) Judicial procedures.—** When a petition is filed under subsection (a) of this section, the clerk of the court immediately shall send a copy of the petition to the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration, as appropriate. The Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration shall file with the court a record of any proceeding in which the order was issued, as provided in section 2112 of title 28.

**(c) Authority of court.—** When the petition is sent to the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration, the court has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order and may order the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration to conduct further proceedings. After reasonable notice to the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration, the court may grant interim relief by staying the order or taking other appropriate action when good cause for its action exists. Findings of fact by the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration, if supported by substantial evidence, are conclusive.

**(d) Requirement for prior objection.—** In reviewing an order under this section, the court may consider an objection to an order of the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration only if the objection was made in the proceeding conducted by the Secretary, Administrator of the Transportation Security Administration, or

Administrator of the Federal Aviation Administration or if there was a reasonable ground for not making the objection in the proceeding.

**(e) Supreme Court review.—** A decision by a court under this section may be reviewed only by the Supreme Court under section 1254 of title 28.

**49 U.S.C. § 46307. Violation of national defense airspace.**

A person that knowingly or willfully violates section 40103(b)(3) of this title or a regulation prescribed or order issued under section 40103(b)(3) shall be fined under title 18, imprisoned for not more than one year, or both. If a person is convicted of a second or subsequent offense under this section, the punishment shall be imprisonment for not more than 5 years, a fine under title 18, or both.

**14 C.F.R. § 99.7. Special security instructions.**

Each person operating an aircraft in an [Air Defense Identification Zone] or Defense Area must, in addition to the applicable rules of this part, comply with special security instructions issued by the Administrator in the interest of national security, pursuant to agreement between the FAA and the Department of Defense, or between the FAA and a U.S. Federal security or intelligence agency.

**14 C.F.R. § 107.47. Flight restrictions in the proximity of certain areas designated by notice to airmen.**

A person acting as a remote pilot in command must comply with the provisions of §§ 91.137 through 91.145 and 99.7 of this chapter.

## NOTAM: 6/4375

×

SECURITY ADVISORY FOR UNMANNED AIRCRAFT SYSTEM (UAS) OPERATIONS IN PROXIMITY TO SELECT LOCATIONS AND MOBILE ASSETS NATIONWIDE. THIS NOTAM REPLACES NOTAM FDC 5/6378. PURSUANT TO 14 CFR SECTION 99.7, SPECIAL SECURITY INSTRUCTIONS (SSI), ALL UNMANNED ACFT ARE PROHIBITED FROM FLYING WITHIN A STAND-OFF DISTANCE OF 3000FT LATERALLY AND 1000FT ABOVE UNLESS INDICATED BY THE FAA BY NOTAM OR OTHER MEANS. TO: DEPARTMENT OF DEFENSE (DOD), DEPARTMENT OF ENERGY (DOE), AND DEPARTMENT OF HOMELAND SECURITY (DHS) FACILITIES AND MOBILE ASSETS, INCLUDING VESSELS AND GROUND VEHICLE CONVOYS AND THEIR ASSOCIATED ESCORTS, SUCH AS UNITED STATES COAST GUARD (USCG) OPERATED VESSELS. PURSUANT TO 49 U.S.C. SECTION 40103(B)(3), THE FAA CLASSIFIES THE AIRSPACE DEFINED IN THIS NOTAM AND IN FURTHER DETAIL BY THE FAA WEBSITE IDENTIFIED BELOW AS 'NATIONAL DEFENSE AIRSPACE'. UAS OPERATORS WHO DO NOT COMPLY WITH THE FOLLOWING PROCEDURES MAY FACE THE FOLLOWING ENFORCEMENT ACTIONS: THE UNITED STATES GOVERNMENT MAY PURSUE CRIMINAL CHARGES, INCLUDING CHARGES UNDER 49 USC SECTION 2601161905-2710291430 END PART 1 OF 4 FDC 6/4375 FDC PART 2 OF 4 SECURITY NOTICE...NATIONAL SECURITY ADVISORY FOR 46307; AND THE FAA MAY TAKE ADMINISTRATIVE ACTION, INCLUDING IMPOSING CIVIL PENALTIES AND REVOKING FAA CERTIFICATES OR AUTH TO OPERATE UNDER TITLE 49 USC SECTIONS 44709 AND 46301. IN ADDITION, UAS OPERATORS WHO ARE DEEMED TO POSE A CREDIBLE SAFETY OR SECURITY THREAT TO PROTECTED PERSONNEL, FAC, OR ASSETS MAY BE MITIGATED PURSUANT TO 10 U.S.C. SECTION 130I, 6 U.S.C. SECTION 124N, AND 50 U.S.C. SECTION 2661. OR OTHER APPLICABLE LEGAL AUTHORITY. MITIGATION MAY RESULT IN THE INTERFERENCE, INTERCEPTION, SEIZURE, DAMAGING, OR DESTRUCTION OF UNMANNED AIRCRAFT DEEMED TO POSE A CREDIBLE SAFETY OR SECURITY THREAT TO PROTECTED PERSONNEL, FACILITIES, OR ASSETS. THE FAA RECOMMENDS THAT UAS OPERATORS NEEDING TO OPERATE IN THE INDICATED AIRSPACE FOR OVERRIDING REASONS OF PUBLIC INTEREST OR NECESSITY (SUCH AS IN DIRECT SUPPORT OF AN ACTIVE NATIONAL DEFENSE, HOMELAND SECURITY, LAW ENFORCEMENT, FIREFIGHTING, SEARCH AND RESCUE, OR DISASTER RESPONSE MISSION) COORDINATE IN ADVANCE WITH THE APPROPRIATE DOD, DHS, DOJ, DOE, OR USCG ENTITY, OR BY CONTACTING THE 2601161905-2710291430 END PART 2 OF 4 FDC 6/4375 FDC PART 3 OF 4 SECURITY NOTICE...NATIONAL SECURITY ADVISORY FOR FAA. DOD, DHS, DOJ, DOE, AND USCG POINTS OF CONTACT FOR SPECIFIC COVERED FACILITIES AND MOBILE ASSETS MAY BE AVAILABLE ON THE FOLLOWING FAA WEBSITE: HTTPS://UDDS-FAA.OPENDATA.ARCGIS.COM. OPERATORS UNABLE TO SUCCESSFULLY COORDINATE WITH DOD, DHS, DOJ, DOE, OR USCG POINTS OF CONTACT MAY CONTACT THE FAA SYSTEM OPERATIONS SUPPORT CENTER (SOSC) AT (202) 267-8276 FOR FURTHER ASSISTANCE. THE FAA APPLIES, TO THE MAXIMUM EXTENT PRACTICABLE, SPECIAL SECURITY INSTRUCTIONS (SSI) PURSUANT TO 14 C.F.R. SECTION 99.7 OR OTHER AIRSPACE MEASURES THAT RESTRICT UAS OPERATIONS IN PROXIMITY TO FACILITIES AND MOBILE ASSETS COVERED BY 6 U.S.C. SECTION 124N, 10 U.S.C. SECTION 130I, AND 50 U.S.C. SECTION 2661. HOWEVER, IMPLEMENTING ADVANCED SSI OR OTHER AIRSPACE MEASURES MAY NOT BE FEASIBLE FOR ALL COVERED ASSETS AND MOBILE ASSET OPERATIONS. UAS OPERATORS SHOULD THEREFORE EXERCISE CAUTION WHEN FLYING IN PROXIMITY OF ALL DOD, DHS, DOJ, AND DOE FACILITIES AND MOBILE ASSETS, AND USCG MOBILE ASSETS. IF YOU HAVE GENERAL QUESTIONS REGARDING UAS OPERATIONS, PLEASE REFER 2601161905-2710291430 END PART 3 OF 4 FDC 6/4375 FDC PART 4 OF 4 SECURITY NOTICE...NATIONAL SECURITY ADVISORY FOR TO WWW.FAA.GOV/UAS/CONTACT; OR CONTACT THE FAA VIA EMAIL AT UASHELP@FAA.GOV OR PHONE AT (844) FLY-MY-UA. IF YOU HAVE QUESTIONS REGARDING UAS-SPECIFIC SSI, PLEASE REFER TO THE FOLLOWING FAA WEBSITE: HTTPS://UDDS-FAA.OPENDATA.ARCGIS.COM; OR CONTACT THE FAA SOSC AT (202)267-8276. 2601161905-2710291430 END PART 4 OF 4

Close

Open TFR List
Open TFR Map
Open NOTAM Text
Map Panel
LAYERS Legend
Measure

ARTCC Centers
Airport (5)
Navaids (5)
Boundaries

Base maps:

VFR Sectional (8)
IFR Low Sectional (8)
IFR High Sectional (8)
World Topo Map
Open Street Map

2000 nm

FDC 6/43
January 16,
Security

raditional NOTAM text is given below:

NAL SECURITY ADVISORY FOR UNMANNED AIRCRAF
E. THIS NOTAM REPLACES NOTAM FDC 5/6378. PUI
RE PROHIBITED FROM FLYING WITHIN A STAND-OFI
NOTAM OR OTHER MEANS. TO: DEPARTMENT OF DE
) FACILITIES AND MOBILE ASSETS, INCLUDING VE
COAST GUARD (USCG) OPERATED VESSELS. PURSU
OTAM AND IN FURTHER DETAIL BY THE FAA WEBSIT
IPLY WITH THE FOLLOWING PROCEDURES MAY FAC
L CHARGES, INCLUDING CHARGES UNDER 49 USC
TICE...NATIONAL SECURITY ADVISORY FOR 46307;
VOKING FAA CERTIFICATES OR AUTH TO OPERATE
D TO POSE A CREDIBLE SAFETY OR SECURITY THRE
TION 130I, 6 U.S.C. SECTION 124N, AND 50 U.S.C
ERFERENCE, INTERCEPTION, SEIZURE, DAMAGING,
REAT TO PROTECTED PERSONNEL, FACILITIES, OR A
RSPACE FOR OVERRIDING REASONS OF PUBLIC IN
SECURITY, LAW ENFORCEMENT, FIREFIGHTING, SE
IATE DOD, DHS, DOJ, DOE, OR USCG ENTITY, OR E
F 4 SECURITY NOTICE...NATIONAL SECURITY ADVI
LITIES AND MOBILE ASSETS MAY BE AVAILABLE O
UNABLE TO SUCCESSFULLY COORDINATE WITH DO
UPPORT CENTER (SOSC) AT (202) 267-8276 FOR F
INSTRUCTIONS (SSI) PURSUANT TO 14 C.F.R. SEC
LITIES AND MOBILE ASSETS COVERED BY 6 U.S.C.
ADVANCED SSI OR OTHER AIRSPACE MEASURES I
RS SHOULD THEREFORE EXERCISE CAUTION WHEN
CG MOBILE ASSETS. IF YOU HAVE GENERAL QUEST
/4375 FDC PART 4 OF 4 SECURITY NOTICE...NATIO
EMAIL AT UASHELP@FAA.GOV OR PHONE AT (844)
OLLOWING FAA WEBSITE: HTTPS://UDDS-FAA.OPEN
PART 4 OF 4

Title 14 CFF

No. 26-1054

**IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT**

ROBERT LEVINE,

*Petitioner*,

v.

FEDERAL AVIATION ADMINISTRATION,

*Respondent*.

# DECLARATION OF ROBERT LEVINE

I, Robert Levine, declare as follows:

1. I am the Petitioner in the above-captioned case. I have personal knowledge of the matters stated in this declaration.

2. I am an independent, freelance photojournalist based in Minneapolis, MN.

## Photojournalism Experience

3. My experience as a journalist and photojournalist spans five decades. As a high school student in Duluth, MN, I shot photos for the school's yearbook and newspaper. In college, at the University of

Minnesota-Duluth, I was a photographer and later the Editor-in-Chief for the *Statesman*, the official university newspaper. In graduate school, while working towards a masters degree in Mass Communication and Journalism at the University of Minnesota at Minneapolis, I worked as a photographer, writer, editor, and designer for the *Minnesota Daily*.

4. In 1983, I took a staff photographer position at the Minneapolis *Star-Tribune*, where I worked for almost four years.

5. Since then, I have worked as a freelance photographer in the Minneapolis area. Portfolios of my work are available on my websites at www.roblevinephotography.com, www.intheairphotography.com, and www.threatenedwaters.com.

**Drone Photojournalism Experience**

6. In 2016, I bought my first drone. To use it for anything other than recreational purposes, I had to become a certified remote pilot under the Federal Aviation Administration's Part 107 regulations. I wanted to follow FAA rules, so I took the Part 107 test and passed it that same year.

7. Drones provide countless opportunities for photojournalism that traditional photography does not. In my career as a traditional photojournalist, I was constantly looking for high vantage points from

which to capture large scenes. Before drones, I had to climb whatever was available to capture sweeping images of crowds or landscapes that show the full picture. I would sometimes shoot from rooftops, with permission. Learning to photograph using a drone was lifechanging for my photography because I could easily capture scenes from perspectives that would be difficult or impossible for me to access otherwise.

8. To take advantage of what drones have to offer for photojournalism, I have invested significant resources into my drone fleet. I own five drones: two DJI Mavic 4 Pro drones, one DJI Neo 2 drone, one DJI Neo drone, and a DJI Phantom 4 Pro V2. The DJI Mavic 4 Pro drones, which I purchased as part of package deals that included, among other things, remote controllers, cost about $8,000 together. All told, I spent over $10,000 on all of my drones and equipment over the past year.

9. I purchased the two DJI Neo drones so that I could fly over people and moving vehicles in compliance with the FAA's Part 107 rules. I only fly these small, FAA-compliant drones, and never my other drones, over people and traffic.

10. I know the FAA's drone-related rules well, and I strive to follow them to the letter. In my ten years of flying drones, I have never

received an administrative penalty, a citation, or any other kind of disciplinary action or warning from the FAA or any law enforcement agency.

11. I photograph and video varied subject matter with my drones. I document protests and crowd scenes, including protests against immigration operations. I have shot infrastructure projects like the construction of a new building in Minneapolis and the new St. Croix bridge south of Stillwater, MN. I have shot landscape and environmental photos, including the Embarrass River, north of the Polymet sulfide mine tailings basin; land owned by Polymet for its sulfide mine; the artificial drainage system in Blue Earth County, MN; and the Blue Earth and Minnesota Rivers, including the failed Rapidan Dam. I've also shot performance art and other cultural events, including an art project called "The Kaleidoscope of Love," which involved 1,000 participants forming the shape of a butterfly and a beating heart in Powderhorn Park, Minneapolis.

12. I've sold my drone photography to the online news site *Minnesota Reformer*, the Minnesota Center for Environmental Advocacy, and law firms that work on environmental advocacy issues. For the

environmental projects, I am usually shooting on assignments I've been provided in advance. The photos I sell to the *Minnesota Reformer* are usually drone photos that I've already shot of my own accord.

13. In 2025, I generally flew my drone about four times a month to take photographs and video.

**Experience with Temporary Flight Restrictions**

14. As a Part 107 pilot, I know how temporary flight restrictions are typically used. In April 2016, for instance, the Standing Rock protests against the construction of the Dakota Access Pipeline broke out. That October, the FAA issued a temporary flight restriction preventing drone flying over the protest area.

15. I thought the protests would be a good subject for photojournalism using drones, but I did not want to violate the temporary flight restriction. I initially requested an exemption by contacting the issuing agency, which in this case was the Morton County Sheriff in North Dakota. I explained that I wished to fly a drone in the restricted area for First Amendment photojournalism purposes. The Sheriff declined to grant me an exemption, so I called the FAA. The FAA granted me a waiver that allowed me to fly within a defined half-nautical-mile

radius within the area covered by the temporary flight restriction. I was the first drone photographer to be given a waiver to shoot drone images of the Standing Rock protests.

16. Having secured the FAA waiver, I drove to the camp. I took a panorama of the whole camp, but I was not able to capture much else—and in particular the conflict with law enforcement that I had come to document—in part because the radius where I was allowed to fly limited what I could capture. I had chosen the camp itself as the center of the area in which the waiver authorized me to fly, but the clash between protesters and law enforcement ended up unfolding outside the area covered by the waiver.

### The January 16, 2026 Temporary Flight Restriction

17. In December 2025, I learned about the Trump administration's "Operation Metro Surge" in Minnesota from news reports. Over the next several months, I repeatedly saw federal immigration agents in Minneapolis. I also follow local social media accounts that document the activities of federal agents in my area, which have continued to publish images and reports of DHS vehicles nearby—

for instance, at the Bishop Henry Whipple Federal Building a few miles from my house—as recently as April 6.

18. I am a resident of the Powderhorn Park neighborhood in Minneapolis. My neighborhood was massively impacted by Operation Metro Surge. There were near-constant protests in my community. When an Immigration and Customs Enforcement ("ICE") agent shot and killed Renee Good on January 7, 2026, I was about six blocks away.

19. During the Operation, I frequently observed DHS vehicles in my neighborhood. I could tell they were DHS vehicles because, as the Operation wore on, DHS convoys began to be followed or led by groups of citizens who were honking their horns, blowing whistles, and setting off car alarms to alert residents to the presence of DHS officials. The vehicles, though, were often unmarked; nothing on the vehicles themselves signified "ICE" or "DHS" or "CBP." If not for the protestors and the outfits the disembarking agents sometimes wore, I would not have known whether convoys of cars driving by were DHS convoys.

20. I observed the presence of ICE officers during enforcement actions and otherwise on Lake Street in Minneapolis—a major business corridor a few blocks from my house. I also saw ICE officers working in

Powderhorn Park near my home. Sometimes the officers wore Kevlar vests with "ICE" printed on the back, but not all of them did.

21. On January 16, 2026, the FAA issued a new temporary flight restriction via NOTAM FDC 6/4375 (the "TFR"). I understand this TFR to prohibit flying drones within 3,000 feet laterally and 1,000 feet vertically of Department of Homeland Security ("DHS") vehicles, including unmarked vehicles.

22. The TFR's roving nature is of particular concern to me. I am aware of and compliant with the FAA prohibition against flying within a certain range of naval vessels, for example. But the location of a naval vessel is something I can ascertain in advance or at least see from a distance. And naval vessels do not move about within a city.

23. DHS vehicles, on the other hand, were and are present in great numbers in Minneapolis and, in my experience, they are often unmarked. I do not know where a "mobile asset" subject to the TFR might be located at any one time.

24. Under FAA rules, I have to be able to see my drone at all times when flying. I can't always see 3,000 feet laterally in any direction from my vantage point of the ground without having my view obstructed by

buildings or the landscape. For instance, if you launched a drone in front of the headquarters of our local NPR affiliate in downtown St. Paul, a 3,000 foot bubble would stretch all the way to—and behind—the hill on which the state capitol sits, with a number of tall buildings in between.

25. Even after launching my drone, I can't always see if there are any DHS "mobile assets" within 3,000 lateral feet or 1,000 vertical feet of my location. The screen that shows what the drone is capturing is small—about five inches wide—and it's difficult to make out fine details until I review the photos or video later. I can also only capture one field of view at any one time.

26. Even if I knew I was looking at a DHS vehicle, I wouldn't be able to judge from the screen whether I was within 3,000 feet with my naked eye, and my drones don't have range finders that show me the distance between the drone and other objects.

27. I have previously used maps on the FAA's website to understand the coordinates and boundaries of temporary flight restrictions in effect near me. I also consult an app called Aloft to make sure I am not flying in violation of any flight restrictions. But this TFR does not show up on FAA maps or on Aloft.

28. Also, because of their presence everywhere in the city, DHS vehicles seem likely to be in the area of newsworthy events that I wanted to photograph, including protests. The TFR prevented me, and continues to prevent me, from flying in places where I know or suspect DHS agents might be present.

29. In short, when the TFR issued I felt that it would be impossible to comply with it even if I wanted to because I could never be certain that I was flying in compliance with the TFR. And the TFR would also prevent me from trying to document the DHS operations unfolding in my city.

**Seeking Guidance from the FAA**

30. In an attempt to understand where and when I was and was not allowed to fly, I contacted the FAA Support Center via email on January 21, 2026. True and correct copies of my emails with the FAA Support Center are attached as Exhibits A and B.

31. I pointed out to FAA employee Paul Hamilton that DHS could easily prevent drone coverage of protests and other events merely by driving vehicles within less than a mile of the event. Mr. Hamilton

responded, without any clarification, that "Much depends on the meaning of the term 'mobile asset.'" Exhibit A.

32. When I pressed Mr. Hamilton on how best to comply with the TFR, noting that the TFR was causing me to "[miss] out on income and opportunities to do photojournalism," Mr. Hamilton provided the following advice from the FAA's legal team: "if you are concerned that you may be violating NOTAM FDC 6/4375, we recommend that you land as quickly and safely as possible. Individuals who feel they may have committed a UAS-related regulatory violation may file a NASA report. [sic] at https://asrs.arc.nasa.gov/uassafety.html." Exhibit A.

33. I explained that "I strive mightily to obey all laws and reg[ulations]" and that I "go above and beyond to fly safely." I repeated my question about how I could comply with the TFR. Exhibit A.

34. Mr. Hamilton stated, "[w]hat we have is an ambiguous TFR. We are working to respond this." Later in the exchange, Mr. Hamilton repeated this sentiment, stating, "[t]hat's the crux of the matter. The NOTAM is ambiguous. Therefore, any flight carries the risk of inadvertent violation." Exhibit A.

## The TFR's Chilling Effect

35. Since the January 16, 2026 TFR was issued, I have had to pass up multiple opportunities to fly my drone that I would have otherwise taken advantage of. At one point during Operation Metro Surge, former Border Patrol Chief Gregory Bovino participated in an enforcement action in South Minneapolis on Lyndale Avenue—about a mile from my home—and residents arrived to protest. I wanted to photograph this action with a drone, but I could not because of the TFR. I also planned to use a drone to photograph a roadblock that protestors began constructing in my neighborhood towards the end of Operation Metro Surge. I chose not to do so until after ICE vehicles left the area because of the TFR, at which point the event was over. In general, I want to document this historic time in my city and my neighborhood, both in terms of immigration enforcement and protests, but I am not willing to violate the TFR to do so.

36. If I violated the TFR and had my Part 107 license revoked, it would mean the end of my career as a drone photojournalist. About 10% of my income comes from selling my drone photography. I would lose that source of income entirely. I would also lose my sense of purpose. I

have been a photojournalist practically all my life, and this TFR is creating a serious impediment not only to my livelihood but to the career to which I've devoted my life's work.

37. I would never have spent over $10,000 over the past year on drones and related expenses (or invested time and energy into earning my Part 107 license and learning all of the FAA's flying rules in the first place) had I thought that I would not be able legally to fly my drone because of a TFR like this.

38. Had I been able to use my drone to document these enforcement actions and protests, I would have tried to sell my drone photos to outlets like the *Minnesota Reformer* as I have for similar events.

39. Since the TFR was issued, I have used my drones for photojournalism only five times, about half as often as I normally would. I did not see any DHS vehicles or any other "mobile assets" on any of those occasions, and I took precautions to ensure, to the best of my ability, that I was not violating the TFR. But it still felt like a risk, because I could not be absolutely certain that I was not flying within 3,000 lateral feet or 1,000 vertical feet of an unmarked "mobile asset." And I still plan to avoid events where the chance of DHS being present is higher.

40. Before the TFR was issued, I planned to use my drone to shoot photos of an annual Mayday Festival parade that takes place in my neighborhood in Minneapolis, Powderhorn Park, and that draws, by my estimate, around 30,000 participants every year. The parade runs for about a mile on Bloomington Avenue, then it spills into Powderhorn Park where there is a big festival with food trucks and puppets and all sorts of family-friendly entertainment. The parade and the festival always celebrate and include people from outside the U.S., including non-citizens. For example, in the past there have been Ecuadorian Americans participating in traditional Ecuadorian dress. I expect that at this year's parade there will be floats and participants protesting ICE.

41. I used a drone to shoot photos of the parade and festival in past years, and I want to do the same again this year. The Festival is scheduled to take place May 3, 2026.

42. However, with the TFR in place, I do not feel comfortable using my drones to photograph this event because of the risk that there may be DHS vehicles nearby. I do not want to risk losing my Part 107 license, being fined, having my drones destroyed, or being criminally charged.

43. If the TFR was lifted in time, I would fly my drone to document the May 3, 2026 Mayday Festival. I would also resume my regular flying frequency to photograph other events and scenes, including DHS operations.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 4/8, 2026, in Minneapolis, MN.

Robert Levine

# EXHIBIT A

**From:** **UAS Support Center** 9-avs-uassc@faa.gov
**Subject:** TFR (ST82452)
**Date:** January 26, 2026 at 4:15 PM
**To:** roblevine82@gmail.com

UC

Rob,

You are most welcome.

Paul

Paul Hamilton

PLH

--------------- Original Message ---------------

From: roblevine82@gmail.com

Sent: 1/26/2026, 4:09 PM

To: 9-avs-uassc@faa.gov

Subject: Re: TFR (ST82452)

Thank you so much for your responses - really.

_rob

On Mon, Jan 26, 2026 at 3:08 PM UAS Support Center <9-avs-uassc@faa.gov> wrote:

> We are working on it actively. I was in a meeting just this morning.
>
> Paul
>
> Paul Hamilton
>
> PLH
>
> --------------- Original Message ---------------
>
> From: roblevine82@gmail.com
>
> Sent: 1/26/2026, 4:06 PM
>
> To: 9-avs-uassc@faa.gov
>
> Subject: Re: TFR (ST82452)
>
> Ok thanks. Just for the record - do you know if the FAA is going to do anything about this TFR?
>
> On Mon, Jan 26, 2026 at 3:04 PM UAS Support Center <9-avs-uassc@faa.gov> wrote:
>
> You will have to take that up with SOSC. As far as I know, it is case-by-case.
>
> Paul
>
> Paul Hamilton

PLH

--------------- Original Message ---------------

From: roblevine82@gmail.com

Sent: 1/26/2026, 3:44 PM

To: 9-avs-uassc@faa.gov

Subject: Re: TFR (ST82452)

I found the page?

https://www.faa.gov/uas/advanced_operations/emergency_situations

Is there a limit to the timeframe for an SGI? Or the operational size?

Thanks

_rob

On Mon, Jan 26, 2026 at 2:38 PM Rob Levine <roblevine82@gmail.com> wrote:

Thank you. Can you briefly explain the procedure? I understand that SGI is Special Government Interest waiver?

_rob

On Mon, Jan 26, 2026 at 2:34 PM UAS Support Center <9-avs-uassc@faa.gov> wrote:

SOSC can grant SGI for a TFR under the justification of the First Amendment for media

Paul

Paul Hamilton

PLH

--------------- Original Message ---------------

From: roblevine82@gmail.com

Sent: 1/26/2026, 10:03 AM

To: 9-avs-uassc@faa.gov

Subject: Re: TFR (ST82452)

I'm really sorry to see this disarray at the FAA. I never knew much about the agency until I began flying drones 10 years ago. Over that period I've come to really admire and respect the agency itself and the people who work there - people who I believe in their hearts are all about safety, and not using pretexts to prevent drone pilots from exercising their first amendment rights. I know this isn't from the professional people at the FAA and comes from political leadership. It's a sad day. This TFR is literally impossible to comply with in Minneapolis.

On Mon, Jan 26, 2026 at 8:55 AM UAS Support Center <9-avs-uassc@faa.gov> wrote:

That's the crux of the matter. The NOTAM is ambiguous. Therefore, any flight carries the risk of inadvertent violation.

I advise going to ASRS and reading the material there. It may be a useful tool.

Paul

Paul Hamilton

PLH

--------------- Original Message ---------------

From: roblevine82@gmail.com

Sent: 1/26/2026, 9:44 AM

To: 9-avs-uassc@faa.gov

Subject: Re: TFR (ST82452)

With all due respect - how in the world would one know if they have violated the TFR? There are 3k ICE agents all over the Twin Cities! Basically anyone flying anywhere here is probably violating the TFR. NASA ASRS is for self-reporting violations. So should I file a report after every mission? Seriously asking.

On Mon, Jan 26, 2026 at 8:40 AM UAS Support Center <9-avs-uassc@faa.gov> wrote:

What we have is an ambiguous TFR. We are working to resolve this. My intent is to tell you how to stay out of trouble. and NASA ASRS is an important resource.

Paul

Paul Hamilton

PLH

--------------- Original Message ---------------

From: roblevine82@gmail.com

Sent: 1/26/2026, 9:27 AM

To: 9-avs-uassc@faa.gov

Subject: Re: TFR (ST82452)

I've been Part 107 for 10 years - I strive mightily to obey all laws and regs - and go above and beyond to fly safely. I'm genuinely asking how I can comply with such a regulation and I'm getting literally zero answers.

On Mon, Jan 26, 2026 at 8:22 AM Rob Levine <roblevine82@gmail.com> wrote:

What kind of answer is that???? "

if you are concerned that you may be violating NOTAM FDC 6/4375, we recommend that you land as quickly and safely as possible"

HOW IN THE WORLD WOULD YOU KNOW THAT??? Can no one answer a plain question???

On Mon, Jan 26, 2026 at 8:15 AM UAS Support Center <9-avs-uassc@faa.gov> wrote:

Rob,

We have been in communication with our legal branch. Their advice is if you are concerned that you may be violating NOTAM FDC 6/4375, we recommend that you land as quickly and safely as possible. Individuals who feel they may have committed a UAS-related regulatory violation may file a NASA report. at https://asrs.arc.nasa.gov/uassafety.html. Without going into much detail, an ASRS can provide immunity from enforcement action.

Paul

Paul Hamilton

PLH

--------------- Original Message ---------------

From: roblevine82@gmail.com

Sent: 1/26/2026, 8:00 AM

To: 9-avs-uassc@faa.gov

Subject: Re: TFR (ST82452)

This situation is rapidly becoming absurd. I'm seeing tons of video & stills from the Twin Cities obviously shot from drones - there's no way this is all being done in compliance with this TFR - compliance that would require 100s of assistants to monitor every road within 3000ft - and still not possible because now ICE /DHS are driving around in disguised vehicles. Further, I'm now missing out on income and opportunities to do photojournalism like this - citizens carving messages into the snow on a Minneapolis lake that can be seen from airplanes arriving and departing MSP.

https://www.facebook.com/steven.brandt.923/posts/pfbid0wzCs2S3xP7iAyBwBT4smVPfarpHYZvSMvXmX7KFqgtddTitfrPuQNpozbZSEBsswl

Is this what the FAA wants - people forced to ignore TFRs because they are totally absurd that literally no one can comply with? What kind of example does the FAA think this sets for other, serious TFRs?

For now I'm grounded.

_rob

On Sun, Jan 25, 2026 at 8:53 AM Rob Levine <roblevine82@gmail.com> wrote:

Mr Hamilton - I'm hoping you can help me here. I want to use my drone for photojournalism in Minnesota - but I'm afraid to do it because there is no way to know where DHS "mobile assets" are - and they're now everywhere here - many not out in the open - but driving around in civilian vehicles of all sorts, disguised as delivery drivers and in other ways. Others are in some kind of official vehicles - but how am I to know if I'm flying and they're 3/5 of a mile away in a dense urban environment? I'm not willing to get arrested for flying a drone, and I strive mightily to obey all the safety laws of the FAA. But I'm now essentially grounded.

What kind of advice would you give to me, because I do see people out there flying, seemingly illegally, if this TFR is to be obeyed. I'm not trying to be troublesome here - I'm genuinely asking a question.

_rob

On Wed, Jan 21, 2026 at 2:21 PM UAS Support Center <9-avs-uassc@faa.gov> wrote:

You are most welcome.

Paul

Paul Hamilton

PLH

--------------- Original Message ---------------

From: roblevine82@gmail.com

Sent: 1/21/2026, 2:40 PM

To: 9-avs-uassc@faa.gov

Subject: Re: TFR (ST82452)

Thank you for the reply. I would suggest this imprecision is deliberate. If you were here in Minneapolis you'd see how ICE, DHS, and CBP are breaking every law in the book. They really don't care about laws or the constitution, TBH.

_rob

On Wed, Jan 21, 2026 at 1:29 PM UAS Support Center <9-avs-uassc@faa.gov> wrote:

Thank you.

Much depends upon the meaning of the term "mobile asset."

Paul

Paul Hamilton

PLH

--------------- Original Message ---------------

From: roblevine82@gmail.com

Sent: 1/21/2026, 2:10 PM

To: 9-avs-uassc@faa.gov

Subject: Re: FAA UAS Support Center: Thank You For Your Submission: ST82452

I wanted to add one thing to this that is particularly ominous. DHS could prevent drone coverage by media WHENEVER THEY WANT merely by driving a few vehicles within 3/5 of a mile of the thing they were trying to prevent drone coverage of - i.e. a protest march, etc.

On Wed, Jan 21, 2026 at 12:14 PM UAS Support Center <9-avs-uassc@faa.gov> wrote:

Hi Rob Levine,

Thank you for contacting the FAA Support Center. We have received your inquiry. You should expect a response from us within 24 hours.

**Support Ticket Reference Number:**
ST82452

**Date Created:**
1/21/2026

**Inquiry Subject:**
TFR

**Inquiry:**
No flight within 3,000 feet of ICE mobile assets. Mobile assets undefined : FDC 6/4375.

*This is an automated email. Please do not reply as this inbox is not monitored.*

Thank you.
Paul

Paul Hamilton

PLH

FAA UAS Support Center
844 FLY MY UA | 844-359-6982
Send us your questions!
Check your Case Status here!
stay current on all things drone
Twitter | Facebook

Paul

Paul Hamilton

PLH

--

https://www.roblevinephotography.com/

https://www.intheairphotography.com/

https://www.threatenedwaters.com/

Paul

Paul Hamilton

PLH

--

https://www.roblevinephotography.com/

https://www.intheairphotography.com/

https://www.threatenedwaters.com/

# EXHIBIT B

**From:** **UAS Support Center** 9-avs-uassc@faa.gov
**Subject:** TFR (ST82452)
**Date:** January 27, 2026 at 2:28 PM
**To:** roblevine82@gmail.com

UC

Rob,

You are most welcome.

Paul

Paul Hamilton

PLH

--------------- Original Message ---------------

From: roblevine82@gmail.com

Sent: 1/27/2026, 2:24 PM

To: 9-avs-uassc@faa.gov

Subject: Re: TFR (ST82452)

So I'm ending this conversation now. I'm bringing a lawsuit against the FAA for a vague regulation that cannot be complied with and that is intended to prevent drone coverage for first amendment purposes.

Thank you for you help

_rob

On Mon, Jan 26, 2026 at 3:04 PM UAS Support Center <9-avs-uassc@faa.gov> wrote:

> You will have to take that up with SOSC. As far as I know, it is case-by-case.
>
> Paul
>
> Paul Hamilton
>
> PLH
>
> --------------- Original Message ---------------
>
> From: roblevine82@gmail.com
>
> Sent: 1/26/2026, 3:44 PM
>
> To: 9-avs-uassc@faa.gov
>
> Subject: Re: TFR (ST82452)
>
> I found the page?
>
> https://www.faa.gov/uas/advanced_operations/emergency_situations
>
> Is there a limit to the timeframe for an SGI? Or the operational size?

Thanks

_rob

On Mon, Jan 26, 2026 at 2:38 PM Rob Levine <roblevine82@gmail.com> wrote:

Thank you. Can you briefly explain the procedure? I understand that SGI is Special Government Interest waiver?

_rob

On Mon, Jan 26, 2026 at 2:34 PM UAS Support Center <9-avs-uassc@faa.gov> wrote:

SOSC can grant SGI for a TFR under the justification of the First Amendment for media

Paul

Paul Hamilton

PLH

--------------- Original Message ---------------

From: roblevine82@gmail.com

Sent: 1/26/2026, 10:03 AM

To: 9-avs-uassc@faa.gov

Subject: Re: TFR (ST82452)

I'm really sorry to see this disarray at the FAA. I never knew much about the agency until I began flying drones 10 years ago. Over that period I've come to really admire and respect the agency itself and the people who work there - people who I believe in their hearts are all about safety, and not using pretexts to prevent drone pilots from exercising their first amendment rights. I know this isn't from the professional people at the FAA and comes from political leadership. It's a sad day. This TFR is literally impossible to comply with in Minneapolis.

On Mon, Jan 26, 2026 at 8:55 AM UAS Support Center <9-avs-uassc@faa.gov> wrote:

That's the crux of the matter. The NOTAM is ambiguous. Therefore, any flight carries the risk of inadvertent violation.

I advise going to ASRS and reading the material there. It may be a useful tool.

Paul

Paul Hamilton

PLH

--------------- Original Message ---------------

From: roblevine82@gmail.com

Sent: 1/26/2026, 9:44 AM

To: 9-avs-uassc@faa.gov

Subject: Re: TFR (ST82452)

With all due respect - how in the world would one know if they have violated the TFR? There are 3k ICE agents all over the Twin Cities! Basically anyone flying anywhere here is probably violating the TFR. NASA ASRS is for self-reporting violations. So should I file a report after every mission? Seriously asking.

violations. So should I file a report after every mission? Seriously asking.

On Mon, Jan 26, 2026 at 8:40 AM UAS Support Center <9-avs-uassc@faa.gov> wrote:

What we have is an ambiguous TFR. We are working to resolve this. My intent is to tell you how to stay out of trouble. and NASA ASRS is an important resource.

Paul

Paul Hamilton

PLH

--------------- Original Message ---------------

From: roblevine82@gmail.com

Sent: 1/26/2026, 9:27 AM

To: 9-avs-uassc@faa.gov

Subject: Re: TFR (ST82452)

I've been Part 107 for 10 years - I strive mightily to obey all laws and regs - and go above and beyond to fly safely. I'm genuinely asking how I can comply with such a regulation and I'm getting literally zero answers.

On Mon, Jan 26, 2026 at 8:22 AM Rob Levine <roblevine82@gmail.com> wrote:

What kind of answer is that???? "

if you are concerned that you may be violating NOTAM FDC 6/4375, we recommend that you land as quickly and safely as possible"

HOW IN THE WORLD WOULD YOU KNOW THAT??? Can no one answer a plain question???

On Mon, Jan 26, 2026 at 8:15 AM UAS Support Center <9-avs-uassc@faa.gov> wrote:

Rob,

We have been in communication with our legal branch. Their advice is if you are concerned that you may be violating NOTAM FDC 6/4375, we recommend that you land as quickly and safely as possible. Individuals who feel they may have committed a UAS-related regulatory violation may file a NASA report. at https://asrs.arc.nasa.gov/uassafety.html. Without going into much detail, an ASRS can provide immunity from enforcement action.

Paul

Paul Hamilton

PLH

--------------- Original Message ---------------

From: roblevine82@gmail.com

Sent: 1/26/2026, 8:00 AM

To: 9-avs-uassc@faa.gov

Subject: Re: TFR (ST82452)

This situation is rapidly becoming absurd. I'm seeing tons of video & stills from the Twin Cities obviously shot from drones - there's no way this is all being done in compliance with this TFR - compliance that would require 100s of assistants to monitor every road within 3000ft - and still not possible because now ICE /DHS are driving around in disguised vehicles

monitor every road within 3000ft - and still not possible because now ICE /DHS are driving around in disguised vehicles. Further, I'm now missing out on income and opportunities to do photojournalism like this - citizens carving messages into the snow on a Minneapolis lake that can be seen from airplanes arriving and departing MSP.

https://www.facebook.com/steven.brandt.923/posts/pfbid0wzCs2S3xP7iAyBwBT4smVPfarpHYZvSMvXmX7KFqgtddTitfrPuQNpozbZSEBsswl

Is this what the FAA wants - people forced to ignore TFRs because they are totally absurd that literally no one can comply with? What kind of example does the FAA think this sets for other, serious TFRs?

For now I'm grounded.

_rob

On Sun, Jan 25, 2026 at 8:53 AM Rob Levine <roblevine82@gmail.com> wrote:

Mr Hamilton - I'm hoping you can help me here. I want to use my drone for photojournalism in Minnesota - but I'm afraid to do it because there is no way to know where DHS "mobile assets" are - and they're now everywhere here - many not out in the open - but driving around in civilian vehicles of all sorts, disguised as delivery drivers and in other ways. Others are in some kind of official vehicles - but how am I to know if I'm flying and they're 3/5 of a mile away in a dense urban environment? I'm not willing to get arrested for flying a drone, and I strive mightily to obey all the safety laws of the FAA. But I'm now essentially grounded.

What kind of advice would you give to me, because I do see people out there flying, seemingly illegally, if this TFR is to be obeyed. I'm not trying to be troublesome here - I'm genuinely asking a question.

_rob

On Wed, Jan 21, 2026 at 2:21 PM UAS Support Center <9-avs-uassc@faa.gov> wrote:

You are most welcome.

Paul

Paul Hamilton

PLH

--------------- Original Message ---------------

From: roblevine82@gmail.com

Sent: 1/21/2026, 2:40 PM

To: 9-avs-uassc@faa.gov

Subject: Re: TFR (ST82452)

Thank you for the reply. I would suggest this imprecision is deliberate. If you were here in Minneapolis you'd see how ICE, DHS, and CBP are breaking every law in the book. They really don't care about laws or the constitution, TBH.

_rob

On Wed, Jan 21, 2026 at 1:29 PM UAS Support Center <9-avs-uassc@faa.gov> wrote:

Thank you.

Much depends upon the meaning of the term "mobile asset."

Paul

Paul Hamilton

PLH

--------------- Original Message ---------------

From: roblevine82@gmail.com

Sent: 1/21/2026, 2:10 PM

To: 9-avs-uassc@faa.gov

Subject: Re: FAA UAS Support Center: Thank You For Your Submission: ST82452

I wanted to add one thing to this that is particularly ominous. DHS could prevent drone coverage by media WHENEVER THEY WANT merely by driving a few vehicles within 3/5 of a mile of the thing they were trying to prevent drone coverage of - i.e. a protest march, etc.

On Wed, Jan 21, 2026 at 12:14 PM UAS Support Center <9-avs-uassc@faa.gov> wrote:

Hi Rob Levine,

Thank you for contacting the FAA Support Center. We have received your inquiry. You should expect a response from us within 24 hours.

**Support Ticket Reference Number:**
ST82452

**Date Created:**
1/21/2026

**Inquiry Subject:**
TFR

**Inquiry:**
No flight within 3,000 feet of ICE mobile assets. Mobile assets undefined : FDC 6/4375.

*This is an automated email. Please do not reply as this inbox is not monitored.*

Thank you.
Paul

Paul Hamilton

PLH

FAA UAS Support Center
844 FLY MY UA | 844-359-6982
Send us your questions!

Check your Case Status here!
stay current on all things drone
Twitter | Facebook

Paul

Paul Hamilton

PLH

--
https://www.roblevinephotography.com/
https://www.intheairphotography.com/
https://www.threatenedwaters.com/

Paul

Paul Hamilton

PLH

--
https://www.roblevinephotography.com/
https://www.intheairphotography.com/
https://www.threatenedwaters.com/

Paul

Paul Hamilton

PLH

--
https://www.roblevinephotography.com/
https://www.intheairphotography.com/
https://www.threatenedwaters.com/